UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BERNARD KABORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00334-JAW |
| | ) | |
| OFFICER-IN-CHARGE, | ) | |
| *U.S. Immigration and* | ) | |
| *Customs Enforcement* | ) | |
| *Scarborough Sub-Office*, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order enjoining the respondents from removing the petitioner outside the District of Rhode Island until the court issues its ruling on the pending petition for writ of habeas corpus. The court authorizes the respondents to transfer the petitioner outside the District of Rhode Island only if it is necessary to attend a bond hearing before an Immigration Judge or for a medical emergency.

I.    **BACKGROUND**

On June 30, 2026, Bernard Kabore filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine pending resolution of his habeas petition. *Emergency Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1) (*Pet.*); *Emergency Mot. for TRO and Prelim. Inj. (No Transfer) and O.S.C. Why Writ Should Not Issue* (ECF No. 3) (*Mot. for TRO*).

Mr. Kabore, a resident of Maine and citizen of Burkina Faso, fled to the United States after experiencing violence and religious persecution in his home country. *Pet.* ¶¶ 1, 10, 16-23. On November 10, 2021, Mr. Kabore was lawfully admitted to the United States on a B-2 visitor visa, expiring on May 9, 2022. *Id.* ¶ 20. Within one year of his arrival, Mr. Kabore filed a Form I-589 application for asylum, which he claims authorizes him to stay in the country beyond the expiration of his visa while his asylum application remains pending. *Id.* ¶¶ 2, 25-27. Since filing his asylum application, Mr. Kabore has lived at the same address in Portland, Maine. *Id.* ¶ 29. He maintains that he has complied with all of U.S. Citizenship and Immigration Services' (USCIS) requirements for asylum applicants, including appearing for biometrics, maintaining his current address, and complying with all agency requests. *Id.* ¶¶ 2, 28-29. Mr. Kabore reports that he is employed at a local non-profit serving asylum seekers, has no criminal history, is not a threat to the community, poses no flight risk, and has not been ordered removed. *Id.* ¶¶ 2, 30.

On June 30, 2026, U.S. Immigration and Customs Enforcement (ICE) arrested Mr. Kabore at his Portland home. *Id.* ¶ 3. At the time he filed his petition, Mr. Kabore was in ICE custody at the agency's Scarborough Sub-Office in Scarborough, Maine. *Id.*; *Min. Entry* (ECF No. 8). Shortly after filing his petition, ICE transported Mr. Kabore to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Min. Entry.* Later that same day, while in transit to Rhode Island and after Mr. Kabore was outside the District of Maine, the Court issued a 72-hour no transfer order, enjoining the named respondents from transferring him outside the District of

Maine or removing him from the United States. *Emergency Order Concerning Stay of Transfer or Removal* (ECF No. 4). Mr. Kabore remains in ICE custody at the Wyatt Detention Facility. *Min. Entry.*

Mr. Kabore alleges his detention violates the Immigration Nationality Act and his due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 37-49; *Mot. for TRO* at 2-5. He seeks a TRO enjoining his transfer from the District of Maine pending his habeas proceedings against the "Officer-in-Charge" of the ICE Scarborough Sub-Office, Patricia Hyde, in her official capacity as Director of ICE's Boston Field Office, Todd Lyons, in his official capacity as Director of ICE, Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security, and Todd Blanche, in his official capacity as acting U.S. Attorney General. *Pet.* ¶¶ 11-15; *Mot. for TRO* at 1-4. Mr. Kabore's motion also asks the Court to issue an order directing Respondents to show cause why his petition should not be granted. *Mot. for TRO* at 1-2. His petition seeks, among other remedies, a writ of habeas corpus ordering his immediate release or, alternatively, that an Immigration Judge provide him with a bond hearing as soon as possible. *Pet.* at 11-12.

## II.    LEGAL STANDARD

The standard for issuing a TRO is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942. "A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right."

3

*Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

## III.   DISCUSSION

At the July 1, 2026 teleconference, Respondents confirmed Mr. Kabore was in Maine when he filed his petition and that Mr. Kabore was in transit to the Wyatt Detention Facility and outside the District of Maine before the Court issued its 72-hour no-transfer order. *Id.* Respondents explained there is no overnight bedspace available in Maine and confirmed they would not transfer Mr. Kabore from the Wyatt Detention Facility, except for a medical emergency or by this Court's order. *Id.*

4

Respondents further confirmed they would not contest the Court's jurisdiction and conceded that a TRO against Mr. Kabore's removal should issue at this time. Given Respondents' representations, the Court concluded it would amend the no-transfer order to enjoin Respondents from transferring Mr. Kabore outside the District of Rhode Island pending resolution of his habeas petition. In conceding the propriety of the issuance of a TRO, Respondents have implicitly admitted that the Court may conclude that Mr. Kabore has proven each of the four factors essential for the issuance of a TRO. The Court accepts Respondents' concession.

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be removal from this Court's jurisdiction pending the Court's resolution of its order to show cause. Accordingly, the Court circumscribes its remedy, at this time, to prevent Respondents from removing Mr. Kabore from the District of Rhode Island until the Court issues its ruling on Mr. Kabore's pending habeas petition.

## IV.    BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The First Circuit has explained "[t]he purpose of such a bond is to

ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security").

In similar cases, the Court has imposed a bond requirement of $100. *See e.g. Situj Garcia v. Stamper*, No. 2:26-cv-00025-JAW, *Order on Mot. for TRO* at 5-6 (ECF No. 8); *Ortiz Sintuj v. Stamper*, 2:26-cv-00027-JAW, *Order on Mot. for TRO* at 5-6 (ECF No. 9). Although there is authority that the bond requirement is mandatory, First Circuit law distinguishes between cases where an injunction exposes a

defendant to a "risk of monetary loss," typically involving "commercial or financial transactions," and "suits to enforce important federal rights or public interests." *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 999-1000 (1st Cir. 1982) (internal punctuation omitted).  In *Crowley*, the First Circuit directed the district courts to consider the following factors in deciding whether to require a bond: (1) the possible loss to the enjoined party, (2) the hardship that a bond requirement would impose on the applicant, (3) the impact that a bond requirement would have on enforcement of a federal right, including a comparison of the positions of the applicant and the enjoined party.  *Id.*  In *Pineda v. Skinner Services, Inc.*, 22 F.4th 47 (1st Cir. 2021), the First Circuit confirmed that the "[t]he bond requirement is not jurisdictional."  *Id.* at 57.  In *International Association of Machinists and Aerospace Workers v. Eastern Airlines* 925 F.2d 6, 9 (1st Cir. 1991), the First Circuit wrote that there is "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond."

Here, there is no evidence that this TRO will cause Respondents to sustain a monetary loss.  Mr. Kabore is where Respondents have brought him and under the terms of the TRO, he will remain there.  The Court infers that the posting of a bond would create a hardship for Mr. Kabore.  Mr. Kabore is representing himself and is currently being held at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, and there is no evidence that Mr. Kabore could as a practical matter obtain a bond.  Finally, although the impact on the assertion of a federal right is

somewhat speculative, the federal government is in an overwhelming position of authority over Mr. Kabore. The Court therefore acts within its discretion and waives the bond requirement in this case. *See Öztürk v. Trump*, 819 F. Supp. 3d 45, 62 (D. Mass. 2025) (waiving the Rule 65(c) bond requirement).

## V.    CONCLUSION

The Court hereby AMENDS its Emergency Order (ECF No. 4) and ORDERS Respondents in this matter are hereby ENJOINED from removing Bernard Kabore from the jurisdiction of the United States or transferring him to a judicial district outside that of Rhode Island pending further order of this Court, except if it is necessary to transfer the Petitioner from the District of Rhode Island for a medical emergency or to attend a bond hearing before an Immigration Judge outside the District of Rhode Island, until this Court issues its ruling on the pending habeas petition.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of July, 2026

8