UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BERNARD KABORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00334-JAW |
| | ) | |
| OFFICER-IN-CHARGE, | ) | |
| *U.S. Immigration and* | ) | |
| *Customs Enforcement* | ) | |
| *Scarborough Sub-Office*, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

A habeas petitioner subject to removal proceedings seeks an order from the court requiring the government to confirm it will comply with the law at his upcoming bond hearing in immigration court. The petitioner also asks the court to hold in abeyance his remaining claims pending the outcome of his bond hearing. In light of the petitioner's upcoming bond hearing, the court holds his petition in abeyance but declines to issue an order requiring the government to confirm it will comply with the law at the hearing.

**I.     BACKGROUND**[1]

Bernard Kabore is a resident of Maine and citizen of Burkina Faso, who fled to the United States after experiencing violence and religious persecution in his home country. *Emergency Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241*

---

[1]     For the purposes of Mr. Kabore's petition and consistent with the parties' stipulation, the Court reviews the relevant facts as alleged in his verified petition and documents attached to the parties' briefing. *Min. Entry* (ECF No. 8).

¶¶ 1, 10, 16-23 (ECF No. 1) (*Pet.*).  On November 10, 2021, Mr. Kabore was lawfully admitted to the United States on a B-2 visitor visa, expiring on May 9, 2022.  *Id.* ¶ 20. Within one year of his arrival, Mr. Kabore filed a Form I-589 application for asylum and for withholding of removal, which he claims authorizes him to stay in the country beyond the expiration of his visa while his asylum application remains pending.  *Id.* ¶¶ 2, 25-27.  Since filing his asylum application, Mr. Kabore has lived at the same address in Portland, Maine and complied with all of U.S. Citizenship and Immigration Services' (USCIS) requirements for asylum applicants, including appearing for biometrics and complying with all agency requests.  *Id.* ¶¶ 2, 28-29.

On June 30, 2026, U.S. Immigration and Customs Enforcement (ICE) arrested Mr. Kabore at his home in Portland, Maine.  *Id.* ¶ 3.  Initially, ICE detained Mr. Kabore at the agency's Scarborough Sub-Office in Scarborough, Maine before transporting him to a facility with available bedspace, the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.  *Id.*; *Min. Entry* (ECF No. 8).  Mr. Kabore remains in ICE custody at the Wyatt Detention Facility.  *Min. Entry*.

That same day, Mr. Kabore filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine pending resolution of his habeas petition.  *See id.*; *Emergency Mot. for TRO and Prelim. Inj. (No Transfer) and O.S.C. Why Writ Should Not Issue* (ECF No. 3) (*Mot. for TRO*).  At the time he filed his petition, Mr. Kabore was detained at the Scarborough Sub-Office.  *Pet.* ¶ 3; *Min. Entry*.  However, before the Court issued its standard 72-hour-no-transfer order, which would have enjoined

Respondents from transferring Mr. Kabore outside the District of Maine, ICE transported Mr. Kabore to the Wyatt Detention Facility in Rhode Island, because Maine had no overnight bedspace available. *Min. Entry*; *Emergency Order Concerning Stay of Transfer or Removal* (ECF No. 4).

At the July 1, 2026 teleconference, Respondents confirmed Mr. Kabore was in Maine when he filed his petition and that Mr. Kabore was in transit to the Wyatt Detention Facility and outside the District of Maine before the Court issued its 72-hour-no-transfer order. *Id.* Respondents further confirmed they would not contest the Court's jurisdiction and that they would not transfer Mr. Kabore from the Wyatt Detention Facility, except for a medical emergency or by this Court's order, conceding that a TRO against Mr. Kabore's removal should issue at that time. *Id.*

Accordingly, the Court amended its 72-no-transfer-order, enjoining Respondents from transferring Mr. Kabore outside the District of Rhode Island pending resolution of his habeas petition, except as necessary to transfer the him from the District of Rhode Island for a medical emergency or to attend a bond hearing before an Immigration Judge outside the District of Rhode Island. *Order on Mot. for TRO* (ECF No. 9).

That same day, the Court also ordered Respondents to show cause why Mr. Kabore's petition should not be granted. *O.S.C.* (ECF No. 10). On July 6, 2026, Respondents filed their response, opposing Mr. Kabore's petition. *Resp. to O.S.C.* (ECF No. 12) (*Resp'ts' Opp'n*). On July 10, 2026, Mr. Kabore filed his reply. *Pet'r's Reply to Resp'ts' Resp. to the O.S.C.* (ECF No. 18) (*Pet'r's Reply*).

## II.    THE PARTIES' POSITIONS

Mr. Kabore alleges his detention violates the Immigration Nationality Act (INA) and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 37-49. As a "bona fide" asylum applicant, Mr. Kabore argues his detention violates both the INA, which expressly authorizes him to remain in the country while his application is under review, and his Fifth Amendment right against detention without adequate justification. *Id.* ¶¶ 27, 31-33, 37-41, 47-49. Mr. Kabore also argues he is entitled to a bond hearing before an Immigration Judge at which Respondents bear the burden to justify his continued detention, as required by First Circuit precedent. *Id.* ¶¶ 42-46. Mr. Kabore's petition initially sought his immediate release, or, alternatively, a bond hearing before an Immigration Judge within seven days.[2] *Id.* at 11-12.

In their opposition, Respondents maintain they have complied with the INA, the relevant regulations, and the Constitution. *Resp'ts' Opp'n* at 2. As Respondents explain, they arrested Mr. Kabore pursuant to a valid warrant, conducted an initial custody determination, issued Mr. Kabore a notice to appear, thereby initiating removal proceedings against Mr. Kabore as required by law. *Id.* at 2-3; *id.*, Attach. 1, *I-200 Warrant*, Attach. 2, *Custody Determination*, Attach. 3, *Notice to Appear*. Consistent with applicable law, upon initiating removal proceedings against Mr. Kabore, Respondents scheduled a bond hearing, at Mr. Kabore's request, before the

---

[2]    His reply brief has narrowed his immediate requested relief. *See Pet'r's Reply*.

Immigration Court at Chelmsford, Massachusetts on July 14, 2026. *Id.* at 3; *see also Notice to Appear* at 3.  Accordingly, Respondents urge the Court to deny Mr. Kabore's petition, because he will receive a bond hearing through the routine administrative process[3] and because due process does not favor his immediate release in these circumstances, where Respondents have faithfully complied with the applicable law and the administrative process for detaining noncitizens subject to removal under § 1226(a) of the INA.  *Id.* at 3-4.

In his reply, Mr. Kabore confirms Respondents' representations but disagrees that his petition should be denied.  *Pet'r's Reply* at 1.  First, Mr. Kabore acknowledges July 14, 2026 bond hearing ameliorates the urgency of some of his claims regarding his request for immediate release but urges the Court to order Respondents "to confirm on the record that the Government will bear the burden of proof" at the scheduled bond hearing in accordance with controlling First Circuit caselaw.  *Id.* at 3-7.  Second, Mr. Kabore asks to preserve his substantive due process and INA claim and for the Court to retain jurisdiction over those claims so that any issue remains unresolved after the bond hearing, he may pursue any remaining claim.  *Id.* at 6.

---

[3]    In their opposition's introductory paragraph, Respondents state Mr. Kabore failed to exhaust his administrative remedies, but Respondents do not address this contention in their brief's argument section. *Id.* at 1.

### III.  DISCUSSION[4]

INA § 1226 governs the "usual removal process," providing detainees subject to removal proceedings with an evidentiary hearing before an immigration judge. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).  Relevant here, is § 1226(a), which "establishes a discretionary detention framework" detainees subject to removal proceedings.  *Gomes v. Hyde*, 804 F. Supp. 3d 265, 268 (D. Mass. 2025); *see also* 8 U.S.C. § 1226.[5]  This provision, empowers the Government to issue an administrative warrant and either continue detention during the removal proceedings or release the detainee on "bond . . . or conditional parole."  8 U.S.C. § 1226(a)(1)-(2).

Applicable regulations provide that when immigration authorities arrest a noncitizen subject to § 1226(a), they must make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8) (2025).  If immigration authorities opt for continued detention, the noncitizen may seek review of that decision at a bond

---

[4]    The Court retains jurisdiction over this matter, because, as Respondents concede, Mr. Kabore filed his habeas petition when he was in their custody while in the District of Maine.  *See Caiza v. Scott*, 1:25-cv-00500-JAW, 2025 U.S. Dist. LEXIS 195270, at *6-7 (D. Me. Oct. 2, 2025) (A district court's habeas jurisdiction is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441-442 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); 28 U.S.C. § 2241(a).

[5]    Section § 1226's discretionary detention framework has one exception for detainees involved in certain enumerated criminal activities.  *See* 8 U.S.C. § 1226(c)(1).  None of those criminal activities is at issue here.

hearing before an immigration judge.  8 C.F.R. § 236.1(d)(1) (2025).  At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk."  *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).  An immigration judge's decision to continue detaining a noncitizen may be appealed to the Board of Immigration Appeals (BIA).  *See* 8 C.F.R. § 236.1(d)(3).

As an individual currently in the United States, Mr. Kabore is "entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment," *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025), which provides that he will not be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").  As the petitioner, however, Mr. Kabore bears the burden of demonstrating by a preponderance of the evidence that his detention violates the Due Process Clause of the Fifth Amendment. *See De Oliveira v. Joyce*, 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citation omitted).

The parties agree Mr. Kabore is subject to discretionary detention and that Respondents have complied with the proper procedures under the § 1226(a). However, Mr. Kabore argues that Respondents' failure to acknowledge First Circuit

7

precedent in *Hernandez-Lara*, which holds that at a bond hearing the Government bears the burden to justify continued detention, suggests that his upcoming bond hearing may not comply with that precedent.  *Pet'r's Reply* at 1, 3-5.

Mr. Kabore, however, has not presented the Court with any evidence to suggest that he will not receive due process at his bond hearing.  In fact, the parties briefing confirms that Respondents have scrupulously complied with applicable law and regulations.  Indeed, Respondents promptly scheduled Mr. Kabore a bond hearing, as he is guaranteed under § 1226(a).  Moreover, Respondents and the Chelmsford, Massachusetts Immigration Court are bound to follow controlling First Circuit caselaw, including *Hernandez-Lara*.  Mr. Kabore's concerns about the adequacy of his bond hearing are therefore more a worry than a likelihood.  Without more, the Court will not require Respondents to confirm in writing that they will comply with the law. To the extent Respondents fail to do so at the upcoming bond hearing, Mr. Kabore may raise that issue with the Court if and when that occurs.

Lastly, considering Mr. Kabore's concession that he will not press his remaining claims at this time but would like to preserve them if any remain unresolved after the bond hearing, the Court will grant Mr. Kabore's request to hold his petition and remaining claims in abeyance pending his bond hearing.

## IV.    CONCLUSION

The Court therefore holds Bernard Kabore's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) in abeyance pending his July 14, 2026 bond hearing before the Chelmsford, Massachusetts Immigration Court.  The Court

ORDERS Mr. Kabore to file a status report within forty-eight hours of his bond hearing, stating whether he has been granted bond and whether any remaining claims from his petition require this Court's resolution.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of July, 2026